**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES R. SIMPSON,                           Case No. 1:10-cv-458

       Plaintiff,                                Barrett, J.
                                                      Bowman, M.J.
     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff James R. Simpson filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error. As explained below, I conclude that the finding of non-disability should be REMANDED, because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On September 24, 2004, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income Benefits (SSI), alleging a disability onset date of September 10, 2004, due to his chronic heart condition.[1] (Administrative Transcript, Tr. at 69).

After Plaintiff's claims were denied initially and upon reconsideration (Tr. 30-32, 504-07), he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").

---

[1] Plaintiff's medical records reflect additional medical and mental health issues, but this appeal asserts error relating only to his heart issues, consistently his chief complaint.

1

In April and again in July 2008, ALJ Daniel Shell held two hearings at which Plaintiff was represented by counsel.  (*Id.* at 515-516, 534-535).  At the first hearing, ALJ Shell heard testimony from Plaintiff; at the second, the ALJ heard from Plaintiff and from William Braunig, a vocational expert.   The primary purpose of continuing the first hearing and holding a second was to permit Plaintiff's records to be reviewed by a state consulting cardiologist.

Plaintiff's educational background is limited.  He did not complete high school but earned his GED in 2003.  (Tr. 74).  Plaintiff worked as a manual laborer for more than 25 years, until September 2004.  (Tr. 79-81).

Medical records reflect that Plaintiff underwent his first major heart surgery, including a coronary bypass grafting "times five" in September 2001 (Tr. 315).  It is undisputed that Plaintiff's initial treatment was highly successful, with Plaintiff returning to work and continuing employment as a laborer until 2004.

In June of 2004, however, Plaintiff began to complain of new symptoms.  On September 9, 2004, Plaintiff underwent a cardiac catheterization, arteriography, left internal mammary angiography, and left ventriculography (Tr. 315-316, 323-324).  Plaintiff did not return to work after that surgery, which revealed significant coronary artery disease.   Eight days later, Plaintiff underwent a successful branch vessel stent deployment in the left anterior descending coronary artery (Tr. 188).

In May of 2005, Plaintiff again underwent a left heart catheterization with a bypass angiogram (Tr. 213).   On the basis of test results which showed multivessel artheroschlerotic coronary disease and a total proximal dominant right coronary artery occlusion, additional surgery was recommended.

On June 6, 2005, Plaintiff underwent a percutaneous angioplasty (PTCA) of the right coronary artery, with evidence of wire perforation (Tr. 216-17, 402).  It is undisputed that the June 2005 surgery was unsuccessful.  Plaintiff was discharged with angina after the surgery (Tr. 218), and continued to complain of severe symptoms through the date of his two hearings.

In January 2006 Plaintiff was admitted to the hospital with chest, shoulder and left arm pain (Tr. 268-269, 275-276).  Plaintiff's symptoms resolved, and follow-up notes from Plaintiff's then-treating cardiologist, Dr. Brown, reflect that Plaintiff felt "well" and was "stable" shortly after being discharged from the hospital  (Tr. 400).  An EEG performed in April 2006 due to Plaintiff's complaints of recurrent episodes of left arm numbness, but was "within normal limits" (Tr. 457).

In early February 2008, due to severe angina, Plaintiff again underwent a left heart catheterization, coronary angiography, left ventriculogram, left internal mammary artery angiography, and right common femoral arteriogram (Tr. 492).  The February 2008 procedure was Plaintiff's last surgical procedure.

On September 17, 2008, the ALJ entered his decision denying Plaintiff's DIB and SSI applications (Tr. 12-22).  The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2009.

2. The claimant has not engaged in substantial gainful activity since September 10, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3

3. The claimant has the following severe impairments: coronary artery disease and chronic obstructive pulmonary disease (COPD)(20 CFR 404.1520(c) and 416.920(c)).

...........

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.....

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he must work in a clean air environment without temperature extremes, and he can not be exposed to high humidity as would be used in the paper making industry or to noxious fumes or chemicals such as in the rubber industry or automobile factory.

...................

[5.][2] The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6. The claimant was born on March 16, 1956 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).[3]

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

---

[2] A minor typographical error caused two consecutive findings to share the same number [5].

[3] The relevant time for determining a claimant's age is the date of the ALJ's decision, which in this case was 52. *See Varley v. Secretary of Health & Human Serv.*, 820 F.2d 777, 780 (6th Cir. 1987). Although not singled out as a separately listed error, this issue is presented and discussed by Plaintiff in the context of his second listed error. (Doc. 5 at 10).

4

>    national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.96-(c), and 416.966).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from September 10, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-21). Thus, the ALJ concluded that Plaintiff was not entitled to disability benefits.

On appeal to this court, Plaintiff maintains that the ALJ erred: 1) by rejecting the opinion of Plaintiff's treating specialist and concluding that Plaintiff could perform light work; and 2) by not finding Plaintiff to be disabled under the Medical Vocational Guidelines.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB or SSI a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d) 1382c(a). Narrowed to its statutory meaning,[4] a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

---

[4] The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). For the Court's own convenience, the remainder of this R&R will refer only to DIB, even though Plaintiff filed applications for both DIB and SSI.

5

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

6

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

In this case, Plaintiff alleges that two errors in the sequential analysis require this Court to reverse the Commissioner's decision and award benefits. Plaintiff argues that the ALJ erred at the third step by failing to find a presumption of disability. Plaintiff also argues that the ALJ improperly rejected the opinions of his treating physicians at the fifth step of the analysis. Both errors are based primarily upon the ALJ's rejection of a functional capacity assessment made by Plaintiff's treating cardiologist, Dr. Robert Pelberg, in favor of the opinions of consulting physicians. Therefore, the ALJ's rejection of Dr. Pelberg's opinion provides the focal point for this Report and Recommendation.

### B. Rejection of a Treating Physician's Opinion

The Social Security regulation pertinent to evaluation of a treating physician's opinion states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2)(emphasis added). In determining the weight to give to any medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support

7

by medical evidence; 4) consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion. *Id.* Plaintiff argues that in this case, the ALJ should have given greater weight to the opinion of his treating cardiologist than to any other treating or consulting physician. Plaintiff points out that the opinions of his family physician also support his claim.

**1. Dr. Robert Pelberg**

Dr. Pelberg is Plaintiff's treating cardiologist and has a long-standing treatment relationship with Plaintiff. As a specialist who has treated Plaintiff since June 21, 2007 (Tr. 392) and who is a member of the same cardiology group that has extensively treated Plaintiff through numerous surgeries and follow-up appointments since 2000 (Tr. 386-456), Plaintiff argues that Dr. Pelberg's opinions should have been controlling.

On October 5, 2007 Dr. Pelberg completed a functional assessment that included severe functional restrictions which would have precluded Plaintiff from the type of light work that the ALJ determined he could perform (Tr. 467). Specifically, Dr. Pelberg opined that Plaintiff is capable of lifting only 10 pounds occasionally, 5 pounds frequently, and can stand or walk only ten minutes at a time for a maximum of 4 hours per workday. (Tr. 467-471A). A few months later, in late February 2008, Dr. Pelberg wrote a letter to Plaintiff's counsel opining that Plaintiff is completely disabled due to "severe class III-IV angina with severe tight unrevascularizable coronary stenoses causing him to have life limiting angina." (Tr. 490).

Notwithstanding the length of the treatment relationship and Dr. Pelberg's expertise, the ALJ rejected the functional capacity assessment completed by Dr. Pelberg, as well as his disability opinion. In rejecting Dr. Pelberg's opinions, the ALJ

8

stated simply that he found Dr. Pelberg's assessment and opinions to be "unsupported by the substantial evidence in the medical record" (Tr. 19).

Ultimately the determination of a claimant's residual functional capacity (RFC) is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2).  There is no doubt that where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).  Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for his rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 1527(d)(2).

On the record presented, however, the ALJ's summary rejection of Dr. Pelberg's opinions as "unsupported by substantial evidence" is not specific enough to satisfy the "good reasons" requirement.  *See* 20 C.F.R. § 404.1527(d)(2), §1527(d)(2).  "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)(quoting Soc. Sec. Rul. 96-2, 1996 WL 374188, at *4).

9

The ALJ was remarkably nonspecific about his reasons for rejecting Dr. Pelberg's opinions - his reasoning appears to be based almost exclusively upon the differing opinions of a consulting cardiologist, but otherwise is silent. Rejecting a treating physician's medical opinion that a Plaintiff has functional limitations merely because a non-treating consulting physician disagrees is not an adequate basis for rejecting a treating physician's opinion. *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(reversing where only stated reason for rejection of limitation was disagreement of another physician). Nor is this a case where the evidence of Plaintiff's coronary artery disease and COPD is "so patently deficient that the Commissioner could not possibly credit it." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

It is true that a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990). However, in this case Plaintiff's treating cardiologist recommended significant ongoing restrictions based upon his intractable coronary artery disease and COPD. *Contrast Ealy v. Comm'r of Social Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)(where treating physicians did not recommend ongoing significant restrictions after catheterizations, acceptance of RFC by consulting physicians was not error).

Dr. Pelberg's recommendations, opinions and assessment were consistent with the assessment and opinions of Plaintiff's long-standing family physician, Dr. Thomas Furlong. Although Dr. Furlong has treated Plaintiff since 1982 (Tr. 481), his opinions were not even mentioned by the ALJ. *See Blakely*, 581 F.3d at 408 (6th Cir. 2009)(remanding in part due to ALJ's failure to give good reasons for rejection of opinion of treating physician who was not referenced in ALJ's opinion). In July 2006,

Dr. Furlong also completed a functional assessment that concluded that Plaintiff was severely restricted. (Tr. 356-61). Like Dr. Pelberg, Dr. Furlough restricted Plaintiff to a maximum of ten pounds, with even greater standing/walking restrictions than those determined by Dr. Pelberg (*See* Tr. 357 (opining that Plaintiff could stand/walk less than one hour per day)). In September 2006, Dr. Furlong also opined that Plaintiff was disabled (Tr. 480-83). The ALJ's rejection of the two functional assessments completed by both Dr. Pelberg and Dr. Furlong does not satisfy the "good reasons" requirement, and is not supported by Plaintiff's medical records as a whole.

Instead, objective medical records, as well as Plaintiff's subjective reports of severe angina symptoms, support the functional assessments of both treating physicians. Dr. Pelberg specifically referenced some of the objective documentation in his July 2, 2008 letter, wherein he stated that Plaintiff "has an ejection fraction of 45% with multiple bypass grafts that are occluded and native severe coronary artery disease that is not amenable to surgical or percutaneous intervention" (Tr. 496). In fact, the ALJ conceded that multiple medical records from 2004 and 2005 show Plaintiff's estimated ejection fraction as impaired, at 40-45% (Tr. 15). In addition, an angiogram performed May 27, 2005 showed a total occlusion of the proximal right coronary artery, and a subsequent surgery to recanalize the blockage failed. A second surgery attempted in June 2005 also failed to remedy the blockage (*Id.*). Finally, a January 25, 2007 nuclear stress test was positive for ischemia (Tr. 391).

Plaintiff's testimony concerning his activities of daily living and frequent use of nitroglycerin also support the functional limitations assessed by his treating physicians. Plaintiff testified that he sleeps 15 hours per day (Tr. 526), and that his left arm frequently goes numb such that he is prone to dropping things (Tr. 522, 545). He

11

further testified that he uses nitroglycerin one to three times per week (Tr. 523, 542-543), that he experiences arm numbness and chest pain without exertion (id.), and that he gets out of breath so easily and so fatigued that he cannot get dressed after his shower without resting (Tr. 527, 540-541). He no longer sleeps in his bedroom on the second level of his home because it is too difficult for him to go upstairs. (*Id.*). Finally, Plaintiff testified that he has asked for modifications to his medications on several occasions due to cost factors as well as their side effects, but that his physicians have advised him that all of his medications are required in the doses prescribed (Tr. 544-545).

The ALJ did not specifically discuss Plaintiff's report of frequent chest pain (angina), or his reports of his severely limited activities of daily living. Nor did the ALJ specifically explain why or in what ways Plaintiff's testimony was not credible. Rather, the ALJ simply stated that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment" as determined by the ALJ. (Tr. 18).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). Even though an ALJ's assessment of credibility is entitled to great deference by this Court, it

still must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In this case, the only reason the ALJ provided for discrediting the Plaintiff's testimony was that it was inconsistent with the ALJ's view of his residual functional abilities.[5]  Unfortunately, in determining Plaintiff's residual functional assessment, both the ALJ and the consulting cardiologist upon whom he heavily relied appear to have overlooked significant objective medical records that strongly support the opinions of Plaintiff's treating physicians, as well as Plaintiff's own testimony concerning his limitations.

**2. Dr. Morton Tavel and the Consulting Physicians**

In May of 2008, Plaintiff's written medical records were reviewed by a non-examining cardiologist, Dr. Morton Tavel.  It is clear from the record that the ALJ initially sought out Dr. Tavel's opinion concerning the dosing of Coreg that Plaintiff had been prescribed for his angina.  At the first hearing, the ALJ repeatedly expressed concern with the dosing, suggesting that it may be excessive based upon 2001 data that suggested that Plaintiff's heart disease was (then) well-controlled (Tr. 529-531).  At the time, the ALJ focused on the 2001 treadmill test and noted that those test results showed that Plaintiff then could do "ten METS," which translates to medium work.  (Tr. 530).  Treadmill testing performed *after* the onset of disability showed that Plaintiff's performance was reduced to "1.00 METS" (Tr. 405-406) but the ALJ did not even discuss those later results in his final opinion.

---

[5] This Court has observed this same error repeated by different ALJs in several recent cases. Such a formulaic and cursory statement, standing alone and without explanation, rarely will prove sufficient to allow adequate review of the ALJ's determination of a claimant's credibility, even under the highly deferential standard afforded to such determinations.

13

Perhaps not surprisingly given the ALJ's focus at the first hearing, Dr. Tavel's opinion concluded that the dosing of Coreg was "excessive" based in large part on the same pre-disability 2001 treadmill test results (Tr. 491). Dr. Tavel specifically noted that the "excessive" dosing could cause symptoms of "[n]ausea, dizziness, and fatigue." (*Id.*). The ALJ agreed with Dr. Tavel's opinion that the dosage of Coreg that Plaintiff has been prescribed was excessive and could itself be causing Plaintiff to experience symptoms of nausea, dizziness and fatigue. (Tr. 19, 491). However, no medical records show that Plaintiff has ever complained of dizziness. In addition, although Plaintiff testified that the Coreg makes him feel "sick," he also testified that prescribed stomach medication controls that side effect. Finally, Dr. Pelberg clearly explained not only the basis for Plaintiff's dosing of Coreg, but also why he believed that none of Plaintiff's symptoms were likely to be caused by the prescribed dose (Tr. 496).

The ALJ's opinion acknowledges primary reliance on Dr. Tavel's "estimate" that Plaintiff could work in a "light or moderate" category as a basis for the ALJ's functional assessment that Plaintiff could perform light work (Tr. 18, 491). The ALJ determined to give Dr. Tavel's opinion greater weight than the opinion of Dr. Pelberg on grounds that Dr. Tavel's opinion "is supported by the objective medical evidence in the record and not inconsistent with the objective medical evidence" (Tr. 19). Although Plaintiff's counsel submitted written arguments to the ALJ advocating the rejection of Dr. Tavel's opinions, the ALJ did not discuss the arguments other than to state that he had "considered" them. Nevertheless, the ALJ afforded Dr. Tavel's opinion "significant weight" (*Id.*).

An ALJ's decision to accord greater weight to state agency physicians over a plaintiff's treating physicians is not, by itself, reversible error, because there may well be

14

appropriate reasons for that decision. *Blakely*, 581 F.3d at 409. For example, if the consulting physician's opinion is based upon more complete information than was available to the physician's treating source, then the ALJ may give greater weight to that opinion. *Id.* (citing Soc. Sec. Rul 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). By contrast in this case, however, Dr. Tavel's reports are rife with error and fail to discuss critical objective tests and procedures, such that the ALJ's almost exclusive reliance on those opinions was clear error.

Plaintiff first points out numerous errors of a typographical nature, such as Dr. Tavel's notation of the year of Plaintiff's surgical bypass grafting as 2004 instead of 2000, and several incorrectly noted exhibit numbers. While minor errors of a typographical nature might not be sufficient to undermine Dr. Tavel's conclusions, Dr. Tavel's report also contains critical substantive errors.

Central to those errors is Dr. Tavel's conclusion that there was "no objective evidence" that Plaintiff was disabled under any Listing (Tr. 491), such as a recent treadmill test. Dr. Tavel erroneously cites 2001 as the last such test he could find in Plaintiff's records. The 2001 test was performed while Plaintiff was still working, more than three years prior to his alleged disability onset date. Unfortunately, Dr. Tavel failed to note that Plaintiff underwent an exercise stress test on March 23, 2005, and obviously did not review the results of that test. The 2005 test results showed that Plaintiff's exertional ability had decreased from the 2001 level of 10 METS to a level of just 1.00 (Tr. 405-406). Dr. Tavel's failure to note such significant post-disability medical records is highly relevant. Under the Listing for ischemic heart disease, a treadmill test result may well be determinative. *Compare, e.g., Wyatt* v. Secretary of Health and Human Servs., 974 F.2d 680, 684 (6th Cir. 1992)(noting that treadmill test is

15

determinative for Listing for ischemic heart disease when a treadmill test result reveals an exertional capacity of "5 METS or less"; see also 20 C.F.R. Pt. 404, Subpt P, App. 14.02).

In addition to this error, which alone would require remand, Dr. Tavel failed to note objective evidence in Plaintiff's records that showed ischemia.  Dr. Tavel cited the lack of objective data showing ischemia, just as he cited to the presumed lack of treadmill test results showing impairment.  Again Dr. Tavel's opinions are based on the false premise that no objective data exists.  To the contrary, despite an overall conclusion of "no evidence for ischemia," a 2005 nuclear study showed a portion of the test as "considered positive for lateral ischemia" (Tr. 406).  In addition, a 2007 test was unequivocally positive for ischemia (Tr. 391).  The ALJ noted the 2007 evidence of ischemia in one portion of his opinion (Tr. 16, noting June 25, 2007 nuclear test), but then inexplicably relied on Dr. Tavel's opinion that Plaintiff's records show "no" evidence of ischemia in a later portion of the same opinion (Tr. 19).

Dr. Tavel also appears to have ignored or failed to review evidence of persistent chest pain in various clinical records.  He referenced two office notes in stating that no chest pain was reported, but either ignored or failed to review other office notes where Plaintiff reported chest pain and symptoms consistent with angina (See Tr. 403 (4/29/05, pain upon exertion); Tr. 268-269, 365 (1/23/06 hospital admission for chest pain);  Tr. 392-394 (6/21/07);  Tr. 388 (7/26/07);  Tr. 473 (11/5/07), and Tr. 496 (1/9/08)).

Dr. Tavel also completely failed to reference plaintiff's unsuccessful angioplasty on June 7, 2005.  The lack of success of that procedure as well as a subsequent unsuccessful procedure provide objective support for Dr. Pelberg's opinion that the blockages that contribute to Plaintiff's symptoms of angina cannot be surgically treated

16

and therefore require maximum medical treatment with Corag and other drug therapies. In fact, Dr. Pelberg reviewed Dr. Tavel's critical assessment and responded to it, defending his prior opinions and the reasons for the Coreg prescription by letter dated July 2, 2008 (Tr. 496). Regrettably, the ALJ never explains why or in what ways Dr. Pelberg's clearly articulated references to objective data are not entitled to deference, particularly when contrasted with Dr. Tavel's far less complete record review.

As support for his reliance on Dr. Tavel, the ALJ parrots Dr. Tavel's incorrect references to the lack of objective data discussed above. In addition, the ALJ cites the opinions of two more non-examining consulting physicians who made similar non-disability findings. The opinions of those two physicians, however, cannot prop up Dr. Tavel's opinions, because they suffer from even greater deficiencies.

Some portion of Plaintiff's written records were reviewed by two consulting physicians in March and November of 2005; both concluded that Plaintiff could perform light work. However, the specialty of those two physicians is not listed in the record (Tr. 204-12); there is no evidence that either was a cardiologist. The date of their opinions reveals that they could not have reviewed Plaintiff's most recent records, and neither had any relationship with Plaintiff or examined him. The ALJ did not discuss any basis for accepting their opinions over the opinions of two treating physicians, who completed functional assessments based upon multiple examinations and complete records borne of a lengthy relationship.

### C. Medical Vocational Guidelines

As his second stated error, Plaintiff argues that if the ALJ had accepted Dr. Pelberg's opinions concerning Plaintiff's functional limitations, he could not have found Plaintiff capable of performing light work. Instead, the ALJ should have determined, at

17

Step 3, that Plaintiff was disabled under the Medical Vocational Rule 201.14. Based on Plaintiff's age of 52 and limited education, with his cardiologist having restricted him to sedentary work and the vocational expert having testified that his past work provided no transferable skills, Rule 201.14 would have mandated a disability finding.

Defendant disagrees only with the argument that the ALJ should have accepted Dr. Pelberg's functional limitations; the Defendant does not dispute that Plaintiff would be considered disabled if those limitations are accepted.

Given that concession, this presents a close case as to whether to simply reverse and remand for an award of benefits, or whether to remand for further review under sentence four of 42 U.S.C. §405(g). Despite the significant errors made by the ALJ, however, some of the objective evidence showed no ischemia, and there is just enough equivocal evidence in the record that the Court concludes that remand for a more complete records review is the better course.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT:**

1. The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to: (1) carefully review objective medical evidence of Plaintiff's heart disease to determine if he meets a Listing and/or should be considered to be disabled under Medical Vocational Rule 201.14; (2) remedy the errors identified in this Report and Recommendation concerning Plaintiff's age, and the weight to be given to the opinions of Plaintiff's treating physicians;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                         */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| JAMES R. SIMPSON, | Case No. 1:10-cv-458 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE, | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).